MWC&GB/USAO#2014R00177

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2015 JAN -6 PM 3: 29

CLERK'S OFFICE
AT BALTIMORE

BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | * CRIMINAL NO. JFM-15-002 |
| ERIC GORDON, | * (False Claim in Bankruptcy, |
| | * 18 U.S.C. § 1519; 18 U.S.C. § 2) |
| Defendant. | * |

\*\*\*\*\*\*\*\*

## INFORMATION
### (False Claim in Bankruptcy)

The United States Attorney for the District of Maryland charges that:

At all times material to this Information:

1. Eric Myles Gordon ("**GORDON**"), age 47, was a resident of Owings Mills, Maryland, and was a physical therapist licensed to practice in Maryland, who owned and operated two physical therapy-related businesses by the names of the Gordon Institute for Sports Performance, LLC ("GISP") and the Gordon Institute for Human Performance, LLC ("GIHP").

2. Saleh Stevens ("Stevens"), an attorney, worked as a senior claims adjuster and bond claim attorney in the bond department of The Hanover Insurance Company. Stevens assisted **GORDON** with the formation of GISP and GIHP, performing various legal and business-related tasks; in exchange for which, Stevens received an ownership stake in GISP and GIHP.

3. Beginning in 2008, **GORDON** began soliciting loans and investments from various individuals to fund GISP's and GIHP's operations. When payments on various private investors' loans were not made, an investor initiated collection proceedings against **GORDON**, GISP and

1

GIHP. In an effort to hinder those collection efforts, **GORDON** created an entity by the name of RHSI, LLC ("RHSI"). **GORDON** transferred receivables and cash assets into RHSI and then caused RHSI to distribute those assets to him for both business-related and personal aims.

4. On July 13, 2012, **GORDON** filed a voluntary petition for GISP under Chapter 11 of the Bankruptcy Code, which was later converted to a case under Chapter 7.

5. None of the pre-bankruptcy transfers of **GORDON**'s personal funds into any of the RHSI accounts were disclosed on **GORDON**'s Statement of Financial Affairs in bankruptcy. **GORDON** then used the money from the various RHSI accounts to (a) pay the expenses of operating GISP and GIHP, and to (b) pay personal living expenses such as groceries, gasoline and hotels.

6. Beginning in December 2011, Stevens began to embezzle funds from Hanover's surety accounts. Stevens caused checks to be deposited in the bank accounts of third-party entities that Stevens either controlled, or which were controlled by his friends. One such entity was RHSI.

7. Without describing the source of the money, Stevens intimated to **GORDON** that this was a surreptitious transaction for which he was seeking **GORDON**'s assistance in transferring the funds through RHSI accounts to two other individuals at Stevens' direction; in exchange for which, **GORDON** would receive a fee of approximately $30,000.00. **GORDON** agreed to do so. In turn, Stevens steered two embezzled checks to RHSI, to wit:

| Check Date | Check # | Payee | Amount | Source | Bank of Deposit |
|---|---|---|---|---|---|
| 09/20/2012 | 1029 | RHSI | $265,892.00 | Modern Construction Trust Account | PNC Bank |
| 09/20/2012 | 1031 | RHSI | $279,983.00 | Modern Construction Trust Account | PNC Bank |
| | | Total: | $545,875.00 | | |

2

8. **GORDON** then used the RHSI account to send most of the money in various checks to Stevens' other associates, including to J.C., an owner of a NASCAR team. In exchange for assisting Stevens in this manner, **GORDON** received $36,000.00, which he spent on personal expenses such as groceries, dining and travel.

9. The agreement to allow Stevens to use RHSI's bank accounts as a conduit for the disbursement from Hanover funds in exchange for a fee was consummated prior to the filing of **GORDON**'s bankruptcy case and, therefore, the money received by **GORDON** should have been deemed property of his bankruptcy estate. Nevertheless, **GORDON** concealed the transaction and provided false information about the transaction in order to hide the fee from the United States Trustee and other officers of the bankruptcy estate.

## CONCEALMENT of RHSI's ACCOUNTS AND TRANSACTIONS

10. In early July 2013, the United States Trustee requested that **GORDON** provide statements for all of RHSI's bank accounts from the time of RHSI's formation through the then-present time. **GORDON**, in reply, sent the Trustee bank statements for RHSI through August 31, 2012. When the Trustee became aware that additional RHSI accounts existed, the Trustee made another request for the missing statements.

11. On September 19, 2013, **GORDON** provided the Trustee with statements for the RHSI account through August 31, 2012 and represented that these were the statements for the entire life of the account.

12. The Trustee was aware that additional statements existed, however, and made another demand for all of the account statements.

13. On October 17, 2013, **GORDON** produced statements for the RHSI account running through March 29, 2013. **GORDON** provided a false explanation for Stevens' Hanover Insurance deposits into his RHSI account, to wit: **GORDON** provided a false bridge loan document that purported to evidence the source of the funds that **GORDON** received from Stevens. The bogus bridge loan agreement, dated September 13, 2012, purported to represent an agreement whereby an entity called "****** Holdings, Co." agreed to lend RHSI $550,000. The loan agreement was signed and dated by **GORDON**.

14. In truth, after extensive discussion and planning between **GORDON** and Stevens, a bogus loan document was created by Stevens in consultation with **GORDON** for the purpose of misleading the United States Trustee and the Chapter 7 trustees for **GORDON**'s bankruptcy case. **GORDON** knew that there was never a loan from "******* Holdings, Co." to RHSI.

15. **GORDON** represented to the United States Trustee that the money to "***** Holdings, Co." was a legitimate marketing investment, brokered by his attorney Saleh Stevens, to a NASCAR racing team. Nevertheless, neither GISP, GIHP, nor any other entity operating under the name "Gordon Institute", remained in business at the time RHSI paid J.C. $450,000 in September 2012.

## THE CHARGE

16. On or about October 17, 2013, in the District of Maryland, the defendant,

**ERIC GORDON,**

did knowingly falsify any document with the intent to impede, obstruct, and influence the proper administration of any matter within the jurisdiction of any department and agency of the United

4

States, and any case filed under title 11, and in relation to and contemplation of any such matter and case, to wit: the creation of a false loan document in order to mislead the United States Trustee.

18 U.S.C. § 1519
18 U.S.C. § 2

1/6/2015
Date

Rod J. Rosenstein  by [initials]
Rod J. Rosenstein
United States Attorney, District of Maryland

5